## PEOPLE v. BOGGS.

A MISTAKE by the Judge in stating the testimony to the jury on a trial for murder is not a sufficient ground for setting aside a verdict finding defendant guilty of manslaughter, where the character of the mistake renders it improbable that the verdict was influenced thereby.

It is not error for the Judge, in stating the testimony to the jury, to read a memorandum of testimony taken by another person, instead of using his own minutes or making the statement from recollection.

In a criminal trial it is not necessary for the Judge, upon stating the testimony, to instruct the jury that they are exclusive judges of the fact.

The fact that the officer having charge of the jury, after they had retired to deliberate, was absent some minutes from the room in which he had placed them, it not appearing that they were allowed to separate; and the fact that some person outside the jury room spoke to a juror, and that some of the jurors spoke to two persons outside, it not appearing what was said or that it had any reference to the trial; and the fact that after the jury had agreed upon their verdict and were brought into the Court room, they were allowed to remain there in the presence of other persons while the officer went to the porch in front of the Court room, and waited some minutes for the Judge, it not appearing that any communication was had with the jury in the mean time, are not sufficient grounds for requiring a new trial.

Where the interference of strangers with the jury is unattended with corruption in the latter, and has not been prompted by a party, and it does not appear that any injustice has thereby been done, the verdict will not be disturbed, whether the cause be civil or criminal, a capital trial or otherwise.

Where the indictment was against James B. Boggs for murder, and the verdict pronounced "the defendant J. M. Boggs" guilty of manslaughter: Held, that the error in the initial of the middle name of defendant in the verdict was immaterial.

APPEAL from the Seventh Judicial District.

The defendant was indicted under the name of James B. Boggs for the crime of murder. The verdict of the jury who tried the case was as follows: " We, the jury, do find the defendant J. M. Boggs guilty of manslaughter. D. D. Hemmenway, Foreman."

Defendant moved for a new trial on the ground of the error in the name of the defendant in the verdict, and also on the ground of misconduct in the jury, and the officer having the jury in charge after the case was submitted. In support of the motion, defendant presented several affidavits, from which it appeared that after the jury had retired to deliberate upon the case, they returned into Court and stated that they differed as to the testimony of two witnesses for the prosecution, (naming them) and thereupon the Judge read to the jury from a memorandum of the testimony, taken by a person who was not an officer of the Court, or sworn to take the testimony, the whole of the testimony of the two witnesses mentioned; that in reading this testimony, the Judge made a mistake as to the statement of the position of defendant's face at a point in the difficulty, near the time of the killing, the passage in the memorandum being " Boggs' face was nearly south; the door from him north-east nearly; my face north," and the Judge's reading being " Boggs' face was nearly north," etc.

This position of defendant's face was referred to in the testimony of one only of the witnesses whose evidence the jury desired to have stated. Other affidavits showed that while the jury were deliberating upon their verdict, the deputy Sheriff, who had charge of them, absented himself from the immediate vicinity of the jury room, and that during his absence some persons on the outside spoke to the jurors within, and some of the jurors spoke to two persons without; and also that two of the jurors left the jury room for a few minutes in charge of the deputy Sheriff; and also that when the jury had agreed upon their verdict, they were conducted into the Court room, the Court being at recess, and while waiting for the Judge, who was called by the officer, they were left in the Court room in the presence of a number of spectators, the officer who had them in charge being at the time outside of the Court room door.

The motion for new trial was overruled, and defendant sentenced to imprisonment for four years and six months. From this judgment, and from the order overruling the motion for new trial, defendant appeals.

*J. Temple,* for Appellant.

*Attorney General,* for Respondent.

NORTON, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

We do not see how the verdict of the jury could have been affected by so slight a mistake as that which occurred in reading the testimony of the witness Cunningham. The door from which McLaughlin issued is stated to have been nearly northeast from where Boggs stood, and the witness stated that Boggs' face was nearly south. It was read to the jury that Boggs' face was nearly north. The jury stated that they differed as to the testimony of the two witnesses, Hickle and Cunningham. The fair meaning of this is, that they differed as to the testimony of these witnesses upon points or portions of the affair as to which they both testified. But Hickle did not say anything as to the direction in which Boggs' face was turned, and there is hence no good reason for supposing that the jury had any doubts upon that point, or deemed it of any importance. It was not of sufficient importance to attract the notice of the defendant's counsel at the time it was read, and no correction was suggested or exception taken to the reading. Neither could the defendant have been prejudiced by the Court giving the desired information by reading a memorandum taken by another person instead of reading its own minutes, if it had taken any, or stating the testimony from recollection. The Court for this purpose adopted this memorandum as its own statement, and there is no suggestion that the memorandum was in any respect erroneous. Nor was it necessary upon stating this testimony to instruct the jury that they were exclusive judges of the fact. We do not find in the Criminal Practice Act the same provision in this respect which is contained in the Civil Practice Act, even if such statement could be considered as a part of the charge of the Court.

The fact that the officer having charge of the jury was absent some minutes from the room in which he had placed them, it not appearing that they were allowed to separate ; and the fact that some person outside the jury room spoke to a juror and that some of the jurors spoke to two persons outside, it not appearing what was said or that it had any reference to the trial ; and the fact that after the jury had agreed upon their verdict and were brought into the Court room, they were allowed to remain there in the presence of other persons while the officer went to the porch in front of the Court room, and waited some minutes for the Judge, it not appearing that any communication was had with the jury in the meantime, are not sufficient grounds for requiring a new trial. When a jury retire to deliberate upon their verdict, the officer having them in charge is sworn to keep them together in some private and convenient place, and not to allow any person to speak to them, nor to speak to them himself. This is a very proper precaution to guard the jury against being tampered with. But it is easy to see that a literal enforcement of this duty must in many cases be impossible, and when there is no reason to suppose that any injury has resulted from a few accidental or careless remarks passing between the jury and strangers, there can be no necessity for ordering a new trial. Notwithstanding some cases in which great strictness has been observed, the cases collected by Mr. Waterman justify his remark that the far more reasonable and just rule, and which is sustained by the weight of authority, is : " that where the interference of strangers with the jury is unattended with corruption in the latter, and has not been prompted by a party, and it does not appear that any injustice has thereby been done, the verdict will not be disturbed, whether the cause be civil or criminal, a capital trial or otherwise." (2 Graham & Waterman on New Trials, 317.)

The error in the initial of the middle name of the defendant appearing in the verdict handed to the clerk by the jury, was not material. They found " the defendant J. M. Boggs " guilty. It was enough that they found the defendant, whom they had in charge, guilty. The words " J. M. Boggs " might have been rejected as surplusage, and their presence under the circumstances could work no injury. Judgment affirmed.