## Commonwealth *v.* Cummings, Appellant.

*Appeals—Assignments of error—Evidence.*

1. An assignment of error to the admission of evidence will not be considered where it fails to set forth the offer, the objections thereto, the ruling of the court thereon, and the evidence admitted.

*Appeals—Paper-books—History of the case—Verdict and judgment.*

2. A paper-book is inadequate and violates rule 24, which does not contain a history of the case, and the verdict and judgment thereon.

*Criminal law—Jury—Separation of jury.*

3. A conviction of making a false election return, will not be set aside simply because jurymen in the case heard or might have heard in another court room during a recess of the trial the offense of ballot box stuffing condemned in argument of counsel, where there is nothing

to show that what was heard by the jurymen was in any way connected with the guilt or innocence of the prisoner.

Argued Oct. 6, 1910.   Appeal, No. 91, Oct. T., 1910, by T. J. Cummings, from judgment of Q. S. Schuylkill Co., Sept. T., 1910, No. 1,199, on verdict of guilty in case of Commonwealth v. T. J. Cummings.   Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ.   Affirmed.

Indictment for making of false election return.   Before Brumm, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* among others was in refusing to withdraw a juror called.

*M. A. Kilker,* with him *M. M. Burke,* for appellant.— The jury were influenced: Holden v. R. R. Co., 169 Pa. 1; Wagner v. Hazle Twp., 215 Pa. 219; Com. v. Stokes, 3 York, 220; United States v. Ogden, 10 Pa. Dist. Rep. 1; Hale v. Hale, 32 Pa. Superior Ct. 37; Com. v. Landis, 12 Phila. 576; Com. v. Johnson, 5 Pa. C. C. Rep. 236; Meyer v. Cadwalader, 49 Fed. Repr. 32; Wagner v. Hazle Twp., 215 Pa. 219; Com. v. Stokes, 3 York, 220.

*W. F. Lyons,* district attorney, and *C. E. Berger,* with them *G. E. Farquhar,* for appellee.—The case of Alexander v. Com., 105 Pa. 1, is directly against the contention of the defendant.

Opinion by Orlady, J., March 3, 1911:

The first nineteen assignments of error so flagrantly ignore the rules of this court that we cannot condone such a procedure by considering them.   In none of these assignments is there a statement of the offer, the objection made, or ruling of the court, or the evidence admitted.

Rule 14 requires that "Each error relied on must be separately assigned, and by itself.   If any assignment em-

brace more than one point, or refer to more than one bill of exceptions, or raise more than one distinct question, it shall be considered a waiver of all the errors so alleged." Where our rules are not complied with, the specifications will not be considered: DeRoy v. Richards, 8 Pa. Superior Ct. 119.

Rule 16 requires that "When the error assigned is to the admission or rejection of evidence, the specification must quote the questions or offers, the ruling of the court thereon, and the testimony or evidence admitted, if any, together with a reference to the page of the paper-book where the matter may be found in its regular order in the printed evidence or notes of trial."

An assignment of error will not be considered when it fails to set forth the offer, the objections thereto, and the ruling of the court thereon: Gish v. Brown, 171 Pa. 479; Sopherstein v. Bertels, 178 Pa. 401; Commonwealth v. Hazlett, 14 Pa. Superior Ct. 352; Keystone Cycle Co. v. Jones, 12 Pa. Superior Ct. 134; Foringer v. New Kensington Stone Co., 223 Pa. 425; Henning v. Keiper, 37 Pa. Superior Ct. 488; Kalin v. Wehrle, 36 Pa. Superior Ct. 305.

Neither a history of the case or the verdict of the jury and the judgment thereon is printed in the paper-book. This omission is in violation of rule 24.

The defendant was indicted for making a false election return, at a primary election held June 5, 1909, in the fifth ward of Shenandoah.

Item "e" of the statement of the question involved is as follows: "Should a juror be withdrawn and the cause continued on the application of the defendant, where members of the trial jury were present in another court room, during a recess in the trial, listening to the delivery of forcible arguments, and to the reading of newspaper articles, referring to the particular offense for which the defendant is on trial?"

This question is fairly presented under the twentieth assignment of error. It appears that during a recess in the trial of this case, and while a case of criminal libel was

being tried in another room in the same courthouse, one or more of the jurors impaneled in this case were in that room, and heard or might have heard the argument of counsel, and newspaper articles read to the jury. This occurred before the commonwealth's side of this case had been closed. This defendant was not in any way identified with that trial, nor was his name mentioned. The argument of counsel and newspaper comments heard by these jurors related generally to the heinousness of the crime of ballot box stuffing, and this without reference to the guilt or innocence of any particular person.

A motion to withdraw a juror was made for the reason indicated, and in overruling the motion, the trial judge said: "In a case like this, a misdemeanor, all jurymen are permitted at intervals between the sessions of court to communicate with, and to be in company with the world at large, and there is hardly a time when they would not in some way come in contact, either through newspapers or declaration, with discussions of punishment that may or ought to be inflicted—not ought to be inflicted, but punishment prescribed by law; and we can hardly conceive how any case would ever be concluded if we were to permit this motion to prevail." And in his charge to the jury, he said: "The reason assigned by the counsel is, that he fears you may possibly be prejudiced by what you may have heard in the court room (No. 1.) or what you may have read in the newspapers. We say to you here that in all of these allegations there was not a scintilla of expression, either written or verbal, that criticised or questioned the matter of the guilt or innocence of the prisoner at the bar. This jury has but one duty to perform, and you are sworn to perform that duty, and that only, and that duty is to find out the truth, and, when this jury has found out the truth in this case, to say in your verdict, what that truth is. That truth is only with reference to the guilt or innocence of the prisoner at the bar: not as to the heinousness of the crime, though horrible it may be, not as to the opinion of the trial judge on that proposition: not as to

any criticism on what the law is or ought to be made, not
in the trial of this case: not as to public sentiment: not as
to public clamor: not as to what the result may be: but
simply that one positive well defined duty to find the
truth as to whether this defendant did make fraudulent
voting lists or not, whether this defendant did make false
returns of this election or not, whether this defendant
did deposit fraudulent ballots or not." We quote thus
liberally to show the care taken by the trial judge to con-.
fine the issue to the testimony adduced on this trial.

By the ancient common law jurors were kept together
as prisoners of the court, until they had agreed upon a ver-
dict.   In later times the old rule has yielded to necessity,
and in misdemeanors and civil cases, jurors are permitted,
during intermission of the sessions of the court, to mingle
freely with the public and return to their homes at night
after receiving an admonition from the bench to not con-
verse with anyone, nor to receive communications from
anyone, touching the cause on trial.

In Alexander v. Commonwealth, 105 Pa. 1, while the
defendant was being tried for murder, the jury were al-
lowed to separate, and part of them attended church, and
heard a sermon on the text "thou shalt not kill." The
court below refused to grant a new trial for the reason that
the sermon, not a fragment of it, neither had nor tended
to have the effect of biasing the minds of the jurors or of
disqualifying them from the proper exercise of their func-
tions, and this view was adopted by the Supreme Court in
affirming a judgment of guilty of murder in the first de-
gree.

It is not always possible, particularly in the limited ac-
commodations of smaller towns during court sessions, to
keep jurors segregated as completely as might be desirable.
The day has gone by when jurors were kept without food
or fire to coerce an unwilling agreement, and jurors are
no longer regarded as wrongdoers, who want only a chance
to violate their duty.  Such situations are to be treated
with common sense, and while the investigation should

be full and searching yet a trial really fair and proper should not be set aside for the mere suspicion or appearance of irregularity shown to have done no actual injury. This is the uniform ruling in this state: Commonwealth v. Lombardi, 221 Pa. 31.

In the case before us, there is no intimation that any of the jurors spoke to anyone, nor that any person spoke to any one of them on any subject. Simply that they heard or might have heard the offense of ballot stuffing condemned in a trial in another court. This assignment is without merit.

That there had been a gross fraud perpetrated at this election, so much so that it was impossible to separate the honest from the illegal votes, is not only manifest but is conceded by the defendant, who was the clerk of the election board. The only contention he made was that the commonwealth had not connected him with the crime. He acted with the board and the returns made by him demonstrated his guilty participation in the crime of which he was found guilty.

The assignments are all overruled, the judgment is affirmed, and it is ordered that the defendant appear in the court below and that he be by that court committed to serve such part of his sentence as had not been performed at the time this appeal was made a supersedeas.