[No. 1742, July 8, 1915.]
## STATE v. GRIGGS.

### SYLLABUS BY THE COURT.
Evidence held insufficient to establish defendant's guilt of the larceny of neat cattle.

Appeal from District Court, Guadalupe County; D. J. Leahy, Judge.

James Griggs was convicted of larceny of cattle, and appeals. Reversed, with directions to award a new trial.

C. C. DAVIDSON of Tucumcari, for appellant.

Ownership must be proved by sufficient evidence or the conviction cannot be sustained.

McKnight v. State, 58 S. W. 95; Kinney v. State, 19 S. W. 681; Thompson v. State, 23 Tex. App. 356; Atkins v. State, 44 Tex. Cr. 291; 12 Cyc. 382.

State v. Griggs, 20 N. M. 466.

There is no proof of venue and no sufficient evidence of the taking.

IRA L. GRIMSHAW, Assistant Attorney General, for the State.

The alleged variance between the allegations of the indictment and the proof were not raised in the motion for a new trial and are not before the court for that reason.

State v. Garcia, 114 Pac. 1012; State v. Padilla, 139 Pac. 143.

The same applies as to the alleged variance in proof of venue.

There is much doubt as to whether the evidence is sufficient to sustain the conviction for the crime charged.

## OPINION OF THE COURT.

ROBERTS, C. J.—Appellant was tried and convicted in the district court of Guadalupe county of the larceny of 24 head of neat cattle of the property of one Florencio Spitz. The principal ground upon which he relies for a reversal is that the verdict of the jury is not supported by any substantial evidence. The facts established upon the trial, briefly summarized, are as follows: The cattle in question belonged to Mrs. Lucinda Spitz, but were in charge of, and under the management and control of, Florencio Spitz. They were grazing upon the open range in parts of Roosevelt, Quay, and Guadalupe counties, and were last seen, prior to the larceny, in Guadalupe county. In March, 1911, Spitz discovered that the cattle were missing, and after some more or less diligent search he failed to find them. A year later Spitz discovered them in possession of the appellant, who, upon affidavit of ownership by Spitz and another man, voluntarily surrendered them to Spitz. The cattle at the time they were stolen bore the Spitz brand, which consisted of an X on the shoulder, X on the side, and X on the hip. At the time

of the recovery the brands had been changed, so that the brands on the hip and shoulder were the figure "8." Appellant accounted for his possession of the cattle by proof of the following facts, which stand uncontradicted in the record: Some time in March, 1911, a man who gave his name as Black brought the cattle in question to the ranch of a man named Crenshaw to be pastured. When the cattle were taken to the Crenshaw ranch they were dehorned and freshly branded. Black left the cattle at Crenshaw's place, which was 60 or 70 miles from appellant's home, for six weeks, at which time he came and got them. Appellant was a deputy assessor of Quay county, and was engaged in assessing property in said county during the months of March, April, and a part of May. One night when he returned to his home he found there a man named Davis, who was a cousin to appellant's wife, and a stranger named Black. Both men were asleep, and he did not disturb them. The next morning appellant was introduced to Black, and went out with him to a lot where Black had turned in some cattle, which Black stated he was driving through to some point in Texas. Appellant had been buying and selling cattle for some years, and was also engaged in the cattle raising business. He offered to buy the cattle, and, after some negotiations with Black, purchased the cattle in question, paying Black $50 in cash, and giving him a check on the International Bank of Tucumcari for the balance, $390. Black, Davis, and appellant went from appellant's home to the residence of M. B. McDonald, a justice of the peace, for the purpose of having prepared and executed a bill of sale for the cattle from Black to appellant. The bill of sale was written out by appellant, signed by Black, and acknowledged before the justice of the peace. The bill of sale was recorded in the recorder's office of Quay county. The check was produced upon the trial, and showed that it had been indorsed by Black and paid by the bank upon which it was drawn. Appellant testified that in February, 1912, he met a man named Letrick, who told him that he was looking for some missing cattle belonging to Mrs. Spitz, de-

scribing the cattle and the brands, and he stated the cattle were now running under the 8 X 8 brand. Appellant told Letrick he had the cattle. This statement was not contradicted by the state.

The Assistant Attorney General says that the theory of the state was that the appellant, the fictitious Mr. Black, and Claude Davis were in a conspiracy, and that the bill of sale was executed as a subterfuge and to throw off suspicion; that in reality the property was stolen by Davis and the fictitious Mr. Black at the behest of appellant; and that the check for $390 given to Black by appellant was indorsed in the name of Black by appellant and cashed. Assuming this to have been the state's theory, the evidence produced upon the trial failed to substantiate the same. Indeed, the Assistant Attorney General admits as much, for he says in his brief:

> "A review of the record in the case at bar will probably demonstrate that the proof was entirely insufficient to justify the jury in finding the defendant guilty of either unlawfully taking and stealing or unlawfully and knowingly driving away the property of another. Our personal opinion is that the appellant should have been acquitted, but, as the jury found the defendant guilty upon the evidence adduced, we feel that it is not our duty, nor does it become our duty, to suggest a reversal of this case on that ground."

The state, in making out its case, relies exclusively upon the fact that appellant was found in possession of the stolen property one year after the alleged larceny. Recent possession of stolen goods, when unexplained, has been held sufficient, by many of the courts, to warrant a conviction, and the fact that the defendant had possession of goods stolen may be proved, notwithstanding the length of time elapsed; that circumstance affecting the weight of the evidence, and not the competency. In this case the presumption to be drawn from the possession of the animals in question by the appellant would not be strong, owing to the length of time that had elapsed from the al-

leged larceny. There were no other facts or circumstances, save possession, which pointed to the guilt of the appellant. His explanation of possession was reasonable and consistent with his innocence. No contradictory statements as to such possession were shown to have been made by him, but all his statements were in accord with the testimony which he gave as a witness. His evidence was fully corroborated by other witnesses; he had placed on the public records of Quay county the bill of sale which he had received for the cattle; he made no effort to conceal the cattle, but confined them in a pasture where they could readily be seen by others; when he learned that inquiry was being made for cattle bearing the brand which he had purchased, he voluntarily admitted having the cattle in his possession. In addition, he established a good reputation for honesty and integrity by numerous witnesses residing in his neighborhood, all of whom had known him intimately for years, and no attempt to show otherwise was made by the state. No attempt was made by the state to show that the appellant had ever been within the confines of Guadalupe county, or that there was no such person as Black.

The conviction of a defendant cannot be upheld in this court, unless there is substantial evidence in the record which, if true, warranted a verdict of guilty. The evidence in this case is insufficient to sustain the verdict, and the appellant should have been awarded a new trial in the court below.

For the reasons stated, the judgment of the trial court will be reversed, with instructions to award the appellant a new trial, and it is so ordered.

HANNA and PARKER, J. J., concur.