(No. 2766, Feb. 6, 1923.)

STATE v. LUTTRELL.

SYLLABUS BY THE COURT

(1) Upon the trial of a homicide case, where a defendant testifies that at the time he shot and killed the deceased he was cool and calm, and was by nature so disposed, and that he committed said act solely to protect himself against a threatened attack on the part of the deceased, it is not error to refuse to submit to the jury the subject of voluntary manslaughter.                                    P. 394

(2) A motion for new trial on account of newly discovered evidence is properly denied, unless such evidence meets the following requirements: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradictory to the former evidence.                                    P. 397

(3) Assignments of error not pursued and discussed in the briefs will be deemed to be waived or abandoned.    P. 398.

Appeal from District Court, Lincoln County, Ed Mecham, Judge.

Paschal Luttrell was convicted of murder in the second degree, and he appeals. Affirmed.

Geo. W. Prichard, of Santa Fe, for appellant.

H. S. Bowman, Atty. Gen. (Moore & Smith, of counsel), for the State.

### OPINION OF THE COURT

BRATTON, J. Appellant was charged by indictment with the murder of James W. Gillispie. He was convicted of murder in the second degree, and, after motion for a new trial had been denied, was sentenced to serve not less than 20 nor more than 25 years in the penitentiary, from which judgment and sentence this appeal has been perfected.

[1] By the first error assigned, appellant complains of the failure of the trial court to submit to the jury the subject of voluntary manslaughter. A determination of this question necessitates a brief review of the evidence submitted. It was contended by the state that appellant and deceased met in the town of Corona on the morning of the fatal difficulty; that they engaged in conversation, and during the same sat down together on the porch of the post office building, appellant sitting to the right of the deceased; that during that morning and prior to the time deceased arrived in said town, appellant had carried his pistol on his right side; that about the time deceased reached said town appellant changed said pistol, placing it on his left side; that while the two were so seated and conversing, and without deceased having changed his position by rising or otherwise, appellant drew his pistol, reached over his left shoulder, and, with the barrel of said pistol within 6 or 12 inches of the face of deceased, shot him, the bullet piercing the right side of the bridge of the nose, almost between the eyes; that deceased fell, and appellant started walking away, when Dr. Stone, who was among the first to reach the scene of the trouble, called him, and asked who had done the shooting, whereupon appellant said that he had, and that, if it were to do over, he would do the same thing. On the other hand, it was contended by appellant that on Thursday before the difficulty, which occurred on Saturday, deceased came to his home dur-

ing his absence and there insulted his wife, but had no illicit relations with her; that on Friday afternoon appellant met deceased in the post office in Corona, and immediately deceased reached for his hip pocket, indicating that he intended to draw a pistol, and then asked appellant if he had done anything improper while at appellant's home the day before; that his suspicion being thus aroused, that night after retiring, appellant raised the subject with his wife, who then told him of such conduct on the part of the deceased; that the following morning, being the day of the difficulty, appellant went to the town of Corona to transact some business and, while there, met the deceased; that appellant at once told deceased he wanted to talk with him; that about the time they sat down on the porch of the post office building the deceased drew his knife from his pocket, opened it and began blading it between his fingers; that just after they sat down appellant asked deceased about his conduct towards appellant's wife, and told him never to come to his premises again; that deceased arose, and in a threatening manner, with said knife in his hand, advanced upon appellant, and while so doing cursed him and told appellant he would kill him if anything further was said upon the subject; that appellant arose at the same time stepped backwards about the same distance that deceased had advanced, and while they were thus engaged, shot deceased solely in self-defense. Appellant stated repeatedly while on the witness stand that at the time he shot deceased he was calm and cool, and explained this by saying he was by nature so disposed. In addition to this, he testified that he did not intend to, and did not kill deceased on account of his conduct towards the wife of appellant. He contended he shot deceased solely to protect himself against such threatened attack.

It thus appears that the contention of the state was that the crime committed was murder while it was vigorously contended by appellant it was committed in

self-defense.   The statute defining   voluntary   man-
slaughter is section 1460, Code 1915, and is in the fol-
lowing language:

> "Manslaughter is the unlawful killing of a human being
> without malice. It is of two kinds:  1st. Voluntary:  Upon
> a sudden quarrel or in the heat of passion.  2nd. Involun-
> tary:  In the commission of an unlawful act not amounting
> to felony; or in the commission of a lawful act which might
> produce death, in an unlawful manner or without due caution
> and circumspection."

It at once appears that in order to reduce an un-
justifiable killing from murder to manslaughter it must
have been committed without malice; it must have been
unjustifiable and have occurred upon a sudden quar-
rel or in the heat of passion.  No such appears from
this record.  Appellant relies upon the case of State
v. Kidd, 24 N. M. 572, 175 Pac. 772.  In that case it
was held that the defendant having guilty knowledge
of his illicit relations with the wife of the deceased,
that such fact being known to the mother of the de-
ceased, who had upbraided the defendant for such con-
duct and urged him to desist therefrom, coupled with
the further fact that he was then being attacked and
threatened with death at the hand of the deceased,
was sufficient evidence of heat of passion to warrant
submitting to the jury the subject of voluntary man-
slaughter.  The important feature which distinguishes
the case now before us from the one referred to is that
here the appellant flatly stated at more than one time
while on the witness stand that he was, at the time he
shot   and   killed   the   deceased,   calm   and   cool,
and was by nature so disposed.  Heat of passion on
the part of the appellant sufficient to reduce the crime
from murder to manslaughter, is a mental condition,
and indeed, he knew more about it and was better able
to tell whether or not it existed than any one.  Had
he not so testified, a different and an interesting ques-
tion would be presented.  It has been held by this court
to be reversible error to submit the subject of voluntary
manslaughter to a jury in this character of a case,

where there existed no evidence upon which to submit the subject nor to support a verdict of guilty thereon. State v. Trujillo, 27 N. M. 594, 203 Pac. 846. Likewise, it has been further held to be reversible error to submit the subject of involuntary manslaughter to a jury, where no evidence existed to warrant such submission, nor to support a verdict of guilty thereon. State v. Pruett, 27 N. M. 576, 203 Pac. 840, 21 A. L. R. 579. The subject has been so thoroughly exhausted, and the legal principals governing the matter now under consideration so exhaustively treated, that it becomes entirely unnecessary to again state them. Sufficient it is to say that we adhere to the conclusions there reached. Manifestly, therefore, the trial court was correct in refusing to submit such issue to the jury.

[2] Appellant next complains of the refusal of the trial court to grant him a new trial upon the ground of newly discovered evidence, which is predicated upon the discovery of one Benseslado Villarreak, who, appellant contends, was an eyewitness to the difficulty between himself and the deceased. An affidavit of this person, setting forth in substance the facts known to him, which are very much in harmony with the testimony given by the appellant, is attached to the motion for a new trial. The requirements necessary to obtain a new trial upon the ground of newly discovered evidence have been many times declared to be: (1) it must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradictory to the former evidence. Territory v. Claypool et al., 11 N. M. 568, 71 Pac. 463; Hancock v. Beasley, 14 N. M. 239, 91 Pac. 735; State v. Padilla, 18 N. M. 573, 139 Pac. 143; State v. Gonzales, 19 N. M. 467, 144 Pac. 1144.

We have carefully examined the affidavit in connection with the testimony submitted upon the trial, and the most that can be said in behalf of this newly discovered evidence is that it is cumulative of the evidence given by the appellant, and is in some degree contradictory to the evidence given by certain other witnesses upon the trial. It does not therefore meet the fifth nor sixth requirement, and hence no error was committed in denying the motion for a new trial.

[3] Other errors are assigned, but they are not presented by appellant in his brief, and under the rule repeatedly announced by this court they are deemed to have been waived or abandoned. Hawkins v. Berlin 27 N. M. 164, 201 Pac. 108.

There being no reversible error in the record, the judgment is affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.