7 P.(2d) 930

STATE v. HERNANDEZ et al.

No. 3606.

Supreme Court of New Mexico.

Sept. 28, 1931.

Rehearing Denied Jan. 19, 1932.

Frank H. Patton, of Silver City, for appellants.

M. A. Otero, Jr., E. C. Warfel, and Quincy D. Adams, all of Santa Fé, for the State.

WATSON, J.

Rafael Hernandez, Victor Araiza, and Enrique Rivera were jointly informed against for the killing of Lyman Garrett. Hernandez and Araiza were convicted of murder in the first degree and have appealed. Rivera was not apprehended.

The body of Lyman Garrett, a deputy sheriff of Hidalgo county, was found on the morning of February 3, 1930, lying near the door of the jail at Valedon, a mining camp in that county. There were on the ground some signs of a struggle. Death had been caused by a skull fracture produced by a blow from some instrument. His pistol was missing, but broken parts of the pearl handle were found near the body. The hands and knuckles were abrased, and the index finger of the right hand broken. There were bruises and contusions on the face; both eyes were swollen

shut and the nose broken. In his coat pocket was found a Harrington-Richardson 32-caliber double-action revolver No. 525391. As late as 1 o'clock of the morning in question the deceased had borne no sign of any injuries.

The next day Hernandez and Araiza were jailed. The latter, some time later, while in jail, signed and swore to a statement to the effect that the three accused had met after a wedding dance and, after indulging in drink, were singing, when Hernandez fired five shots from his pistol; that the deceased thereupon came and placed the three under arrest, searched Hernandez and Rivera, took Hernandez' pistol and put it in the left pocket of his coat; that the deceased started the three accused toward the jail, following behind them; that when deceased started to unlock the jail door, Rivera grabbed him from behind, Hernandez also seizing him, Rivera twisting deceased's gun out of his hand and striking him with it, breaking the pearl handle; that in the meantime Hernandez was holding the deceased; that the three, then going back in the direction from which they had come, met one Carreon whom Rivera and Hernandez told that they had killed the deceased; that Carreon then told Rivera to throw away the pistol of the deceased which he still had, but that Rivera did not do so; that the three soon thereafter separated; and that Rivera had not been seen since. This statement was received in evidence as against Araiza, but not as against Hernandez.

The further evidence in the case was circumstantial. Several persons heard the shots.

One witness heard the singing, recognized the voice of the deceased shouting to the disturbers, and soon thereafter saw three men, followed by a fourth, moving in the direction of the jail. A little later he saw three men returning from the direction of the jail and heard a voice exclaim, in Spanish idiom, what is translated as, "Throw away that worthless thing or trash." Another witness met the three accused persons together at about 3 o'clock in the morning. Another witness who heard the shots and the singing testified that, some twenty or thirty minutes later, Rivera came to the house where the witness was in bed, asked for liquor, and evidently had been drinking.

Hernandez had numerous abrasions on his right hand and knuckles, which he accounted for by claiming that a falling rock had struck him on the hand in the mine. The shift boss, to whom Hernandez told this story, when Hernandez was coming off his shift about twenty-four hours after the homicide, testified that the hand was not crushed or bloody as though hit by a rock, and that the wounds appeared to be older than Hernandez represented. The physician who examined the hand three or four days after the homicide, describing the injuries as abrasions and bruises, was of opinion that they had not been caused by a falling rock. The shift boss offered to bandage the hand and said that he would report the accident, but Hernandez protested that neither was necessary.

While in jail Hernandez was questioned about having a pistol and denied that he had ever had one. The pistol found in the

pocket of the deceased was shown to have been in stock in a store at Pecos Mines some months before the homicide. One Rico had purchased a similar pistol at that store which he had taken with him to Valedon and sold to the witness Nevarez, who testified that he sold the pistol to Hernandez. Neither of these witnesses could identify the pistol found in the pocket of the deceased by number or manufacturer's name, but testified that as to caliber and model and general appearance it was the same. Shortly before the homicide Hernandez had apologized to a creditor for delay in paying his account by explaining that he had ordered a pistol.

 The first question is whether the foregoing facts, which the jury were entitled to believe, constitute substantial evidence of guilt. The cases of the two appellants are different.

As to Hernandez the statement of his codefendant is not to be considered. Nothing is left but circumstances. These circumstances are, as the jury no doubt believed, that this appellant was in the vicinity of the scene of the homicide at that early hour in the morning when it must have occurred; that the deceased was killed by some one resisting arrest; that deceased had been slain with his own pistol; that in his pocket was another pistol, probably taken from the slayer; that that pistol belonged to Hernandez, and that he had denied having or owning a pistol; that Hernandez had recently engaged in fistic combat and had made a false explanation of the injured condition of his hand resulting therefrom. We are constrained to hold that

these circumstances constitute substantial evidence of guilt. Our inquiry goes no further. State v. Clements, 31 N. M. 620, 249 P. 1003.

 The conviction of Araiza rests upon his own statement. There is no circumstance inconsistent with it. The case thus differs from State v. Clements, supra. As appears from the evidence, the homicide was perpetrated by Hernandez and Rivera. No evidence whatever connects this appellant with the homicide except to place him at the scene of it. That is not enough. To sustain his conviction we must be able to find evidence that he was aiding and abetting. Not only was there a complete absence of such evidence, but the only evidence, his exculpatory statement, is to the contrary. The case seems to be within the principle of State v. Griggs, 20 N. M. 466, 150 P. 921.

 The only evidence pointed to by the Attorney General to sustain the verdict as against the exculpatory statement is the fact that, while Araiza was present and necessarily knew of the crime, he concealed it, or at least failed to disclose it until after his arrest. No active concealment is shown. While he did not disclose it to the officers for several days, the sheriff testified that he would have talked immediately after his arrest if he had been allowed to. We cannot view this as substantial evidence that Araiza was present, aiding and abetting.

 Before the conclusion of the case appellants moved for a mistrial upon a showing of separation of the jury. During a recess of

the court nine jurors were in a barber shop, two outside on the sidewalk, one bailiff in the doorway between the two groups, and a twelfth juror, accompanied by another bailiff, was at another barber shop 75 feet away. While the last-mentioned juror was being shaved the bailiff was outside the shop, having him within sight through the window, but not within hearing. No communication with any juror was shown, though it is apparent that in the case of the last-mentioned juror there was an opportunity for communication.

The contention is that the burden was on the state to rebut a presumption of prejudice, but this must be overruled on authority of State v. Starr, 24 N. M. 180, 173 P. 674; State v. Blancett, 24 N. M. 433, 174 P. 207; State v. Clements, 31 N. M. 620, 249 P. 1003.

■ After both sides had rested appellants moved for a directed verdict on the ground that there was no proof of the venue. We need not decide whether there was error in overruling this motion, since the court thereupon sustained the state's motion to reopen for the purpose of proving venue.

Appellants admit that it is ordinarily within the discretion of a trial court to reopen a case for the reception of further proofs. They contend, however, that this discretion is reviewable for abuse, and that its exercise in this case was reversible error because of the prejudice resulting.

The prejudice relied on is that evidence was thus supplied without which there could have been no legal conviction, and without which a conviction must necessarily have been vacated upon a motion in arrest of judgment. This is not prejudice in the sense in which the word is used in this connection. It was harmful to appellants, of course. But discretion to reopen a case would amount to little, if only harmless evidence could be thereafter received. We find no merit in this point.

■■ Error is assigned upon the court's refusal to strike the testimony of witness Pick. On direct examination this witness testified that he lived at Glorieta; that he owned general merchandise stores at Lamy, at Glorieta and at Pecos Mines; that he handled firearms, including pistols manufactured by Harrington-Richardson Arms Company; that he handled 32-caliber double-action revolvers of that make; that early in 1929 he had in stock at his Pecos Mines store revolver No. 525391 of that make, model, and caliber; that the witness' brother had sold that revolver to one Manuel Rico, and that the pistol marked State's Exhibit 1 (found in the pocket of the deceased) was the revolver so sold.

On cross-examination he said that he knew his brother sold it because "he told me so himself." Counsel then moved "that the testimony of the witness be stricken from the record on the ground it is hearsay testimony solely." After some further questions by the district attorney and some argument, counsel moved "to strike all that part of the testimony of this witness in so far as the same is hearsay testimony with reference to the sale of the pistol to Manuel Rico by the

brother of this witness." The court ruled: "The motion as presently made will be sustained and former motion overruled."

On further cross-examination it developed that the witness' knowledge that the identical pistol (State's Exhibit 1) had been in his stock was derived from a letter from the wholesale house with which he dealt, stating that pistol No. 525391 had been sold to him. Thereupon counsel moved "that all the testimony of this witness be stricken," specifying as grounds of the motion that it was hearsay, and secondary evidence. This objection was overruled and exception taken.

The testimony that the witness' brother had sold the pistol was stricken. The only hearsay testimony left in the case is of the letter received by the witness from the wholesale house, which identified by number the pistol introduced as State's Exhibit 1 as a pistol formerly in stock at Pecos Mines. The remainder of the witness' testimony was not subject to the objection made, and the particular evidence which was subject to the objection was not called to the court's attention. The motion was therefore not well taken, and it was not error to overrule it. Had counsel specified the evidence objectionable as hearsay, the court would no doubt have stricken it. He had already stricken the evidence as to the sale by the brother, on its being particularly pointed out to him; at the same time overruling the general objection to all the witness' testimony. The court might well have stricken the evidence as to the letter of his own motion. This record does not disclose whether the court overlooked that particular bit of evidence in ruling on the motion, or whether he was dealing strictly with counsel in the matter of making objections. In either case counsel is not in a position to complain.

It is contended that the court erroneously admitted the pistol as an exhibit. The contentions are that no competent evidence had traced the pistol to the Pecos Mines store, and that the identification by the witnesses Rico and Nevarez was not positive. The statement herein made as to the testimony of these witnesses, in connection with what we have just said under the last point discussed, is sufficient to show that the evidence identifying the pistol and connecting it with appellant Hernandez was substantial. Though some of this evidence was incompetent, it is nevertheless in the case. The jury had the right to act upon it, and it is to be considered in determining the admissibility of the pistol as well as in determining the sufficiency of the circumstantial evidence as against appellant Hernandez. State v. Blacklock, 23 N. M. 251, 167 P. 714.

We find no merit in the contention of error in admitting the testimony that Hernandez, in apologizing for failure to pay his debt, had made the statement that he had ordered a pistol.

We find no error affecting the judgment as to appellant Hernandez. It should be affirmed. As to appellant Araiza, we conclude that the court erred in refusing to direct a verdict of acquittal. The judgment should therefore

be reversed as to this appellant, and the cause remanded, with a direction to discharge him. It is so ordered.

SADLER and HUDSPETH, JJ., concur.

BICKLEY, C. J., and PARKER, J., did not participate.