127 P.2d 875

## STATE v. LANGDON.

No. 4697.

Supreme Court of New Mexico.

July 8, 1942.

Robert Hoath LaFollette, of Albuquerque, for appellant.

Edward P. Chase, Atty. Gen., and Howard F. Houk, Asst. Atty. Gen., for appellee.

BICKLEY, Justice.

The appellant and Bailey and Golden were charged jointly with the possession of burglary tools contrary to law. They each pleaded not guilty. They were convicted by the jury and sentence imposed and only Langdon appeals.

Errors are assigned for refusal of the court to order a directed verdict at the close of the State's case, and the refusal of the Court to sustain Langdon's motion to set aside verdict and vacate the judgment.

During the conduct of the State's case, the prosecuting officers offered the following voluntary statement made by Langdon and no objection being made thereto by any of the defendants, it was received:

"I have known Lester Bailey about 7 years and have known Jimmie Miller about two years. We three left Indianapolis in Bailey's mother's car Monday July 7th. Stopped at Tulsa, Oklahoma, one night, the second night, we stayed the first night this side of St. Louis. Arrived in Santa Fe Wednesday night, July 9th, stayed in cabin 18 Siera Vista Court until noon yesterday. Drove to Albuquerque and had not registered or put up at any Hotel or Auto Court when Bailey and I were arrested. We were undecided as to whether we would go back home or over to the Coast. We were intending to pick Jimmie up at the Bus Station and go on when we were arrested. We were strictly on a vacation and had no plans for any robberies or stick ups.

"I was convicted of armed robbery in Marion County, Indianapolis, Ind. in 1930—

January ?, sentenced to 10 years in the Reformatory in Pendleton Ind. Served as No. 20705 and served 5 years. Released on parole for one year, in January '36. Received final discharge in February 1937. Jimmie Miller came into the Reformatory just before I was released from there. I don't know anything about any guns, blackjacks, burglary tools or any thing of that kind that may have been in the car. I am married and have a boy 14 years old by a former marriage. Parents, Mrs. Margaret and William Albert Langdon Roosevelt Hotel Indianapolis Indiana—

"The above is a true and correct statement and made voluntary."

The State's case was comprised of some forty exhibits of articles which the testimony shows were adaptable for plying burglarious pursuits, and other evidence.

Most of these articles were contained in a suitcase found in the possession of Golden in a cabin he had rented in Albuquerque. Two "jimmy bars" said to be suitable for committing burglary were found in an automobile which had been used for making the trip referred to in Langdon's statement. None of the defendants testified nor did they offer any evidence in their behalf. They each told the officers that they knew nothing about these tools.

Appellant concedes that constructive possession of burglary tools is sufficient.

His claim is that the evidence which is circumstantial does not sufficiently establish his constructive possession of these articles or any of them.

His argument is that the broad statement made in State v. Butler, 38 N.M. 453, 34 P. 2d 1100, 1101, that: "The state, having introduced an incriminating admission, is bound to overcome the exculpatory matter contained in it," precludes a conviction in the case at bar.

What appellant refers to as the "exculpatory matter" in his written statement voluntarily made to the officers is: "I don't know anything about any guns, black jacks, burglary tools or anything of that kind, that may have been in the car."

■ It is to be doubted that the foregoing language comprises exculpatory matter within the rule.

We go first to the lexicographers and find that "exculpate" is employed in the sense of excuse or justification. Under "exculpation" in Century Dictionary the following illustration is given: "In Scotland, the law allows of an exculpation, by which the prisoner is suffered before his trial to prove the thing to be impossible." For an instance, in the case of Otts v. State, 135 Tex.Cr.R. 28, 116 S.W.2d 1084, 1085, 116 A.L.R. 1454, we find the following:

"The offense charged is the theft of one head of cattle, and punishment fixed at confinement in the penitentiary for two years.

"This is a case of circumstantial evidence, and the court so charged the jury.

"Mr. Donnell lost a certain animal, and its hide and head were found hidden under

a bridge in Stephens county. The connection of appellant with the theft of said animal was mainly predicated on the fact that the appellant and his brother, Amos Otts, stored with Mr. McElroy at his ice house, in Amos Otts' name, a hind quarter of a beef. There were some pieces of flesh cut out of this quarter and left on the hide, and, when the hide was fitted to the meat, there appeared pieces of meat that fit the depressions on the hind quarter.

"These circumstances were the only proof that served to connect the appellant with this theft, save and except his confession, if such confession does thus connect him. The confession is, in substance, that appellant and his brother were out on a certain road on the night before this meat was stored by them, and they purchased such quarter of beef from a man whose name was unknown to them, and paid him therefor the sum of $4 and took such beef to the ice house and had it stored there. This statement was introduced by the State, and, of course, if the same were true, then the appellant could not have been guilty of stealing the animal from which this hind quarter of beef was taken. The identification of this quarter of beef was very material, and, if such came from the stolen animal, and its possession in appellant remained unexplained, it would have been a strong circumstance going to show that he was the original taker of the animal. But the State comes in and introduces the signed statement of appellant showing that he had in good faith purchased this meat from another, thus exculpating himself."

In the Annotation to the last cited case further illustrations are given of where the defendant did not admit the crime charged, but merely made exculpatory statements in the nature of an alibi.

It would seem that if the broad rule stated in State v. Butler, supra (a case where the homicide was admitted but the admission sought to exculpate on the ground of self defense) is to be applied, it should be limited to some tangible, affirmative, defensive, exculpatory factual matter capable of specific disproof, and not extended to a mere reiteration of innocence embraced in the plea of not guilty as in the case at bar.

Appellant's counsel in his brief says: "In the case at bar, there is no evidence whatsoever introduced at the trial, which tended to overcome the presumption of innocence with which the defendant Raymond C. Langdon, was cloaked, or which satisfied the accelerated burden of proof created by the State's introduction of the declaration containing exculpatory matter."

From what we have heretofore said it is to be doubted that what is claimed to be exculpatory matter is really so, or resulted in any acceleration of the burden of proof resting upon the State arising from the plea of not guilty, to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant was guilty as charged.

The annotation to Otts v. State discloses that the courts of Texas have had this question before them more frequently than appears in other jurisdictions but even there we do not discover that they have gone fur-

ther than to hold that: "Where the defendant does not testify in the case, and where the State in developing its case in chief introduces in connection with a confession or admission of the defendant an exculpatory statement which if true would entitle him to an acquittal, the jury should be told that he is entitled to a verdict of not guilty unless such exculpatory statement has been disproved or shown to be false by other evidence in the case." [135 Tex.Cr.R. 28, 116 S.W.2d page 1088, 116 A.L.R. 1454.]

█ So after all, it is ordinarily a question for the jury.

No request was made by the appellant for an instruction to submit the question of the alleged exculpatory statement as a separate defensive issue in the case at bar. See State v. Gabaldon, 43 N.M. 525, 96 P.2d 293.

█ Necessarily if the state produced evidence sufficient to satisfy the minds of the jurymen that the defendant had in his possession burglary tools "under circumstances evincing an intent to use, employ or allow them to be used or employed in the commission of a crime" such evidence would be sufficient to disprove appellant's statement that he knew nothing about any such tools that may have been in the possession of his associates or in the car in which he had come from a distant city.

The Supreme Court of Missouri in State v. Young, 119 Mo. 495, 24 S.W. 1038 upheld this instruction: "The defendant is entitled to what he said for himself, if true, and the state is entitled to the benefit of any-

thing he said against himself in any statement or statements proved by the state. * * * What the defendant said for himself the jury are not bound to believe, because said in a statement or statements proved by the state, but the jury may believe or disbelieve it, as it is shown to be true or false by the evidence in the cause."

In State v. Holden, 45 N.M. 147, 113 P.2d 171, 176, we developed the same idea, saying:

"There are other circumstances, but, finally, the defendant's own offer, made several times, to plead guilty, although professing innocence, was a matter peculiarly within the jury's province to appraise. In view of all the other circumstances, in reaching its verdict, it may have disregarded the assertion of innocence and have given significance only to the offer to plead guilty. Obviously, this is exactly what happened. The defendant's statement was not entirely exculpatory so as to bring it within the rule applied to one of the defendants in State v. Hernandez et al., 36 N.M. 35, 7 P.2d 930.

"Within the rule announced in State v. Clements, 31 N.M. 620, 249 P. 1003, 1006, and applied to the defendant, Hernandez, in State v. Hernandez, supra, we are constrained to hold the evidence, although entirely circumstantial, affords substantial support for the verdict. In the Clements case we quoted approvingly from 17 C.J. 267 (24 C.J.S., Criminal Law, § 1882), among other things, the following: 'A verdict based on circumstantial evidence carries the

same presumption of correctness as other verdicts, and will not be disturbed unless wholly unwarranted, even though the evidence is weak and unsatisfactory to the appellate court.'"

It would serve no useful purpose to here recount the testimony of circumstances from which the jury could have arrived at the verdict. We have read it with care and we are not able to say that the verdict is unwarranted.

It follows from what we have said that the record is free from error and that the judgment of the trial court accordingly should be affirmed.

It is so ordered.

BRICE, C. J., and ZINN, SADLER, and MABRY, JJ., concur.