237 P.2d 591

**STATE v. LOPEZ.**

No. 5411.

Supreme Court of New Mexico.

Nov. 13, 1951.

McAtee & Toulouse, and Serenea H. Green, all of Albuquerque, for appellant.

Joe L. Martinez, Atty. Gen., Hilario Rubio, Asst. Atty. Gen., for appellee.

SADLER, Justice.

The defendant was convicted of uttering a forged instrument, to-wit, a check, and sentenced to a term in the state penitentiary. 1941 Comp. § 41-2002. He prosecutes this appeal from the sentence so pronounced upon him.

The check involved was made payable to one Willie Maldonado, or bearer, in the sum of fifty three ($53.00) dollars, purportedly signed by a Leroy B. Mills and drawn on First National Bank in Albuquerque, New Mexico. The name of the payee was fictitious so far as the record discloses and that of the drawer a forgery. The check was handed to one Johnny Perea, a friend and companion of defendant, on June 29, 1950, with instructions from the defendant to cash it. This Perea did on the same date by purchasing an automobile tire from a service station in Albuquerque, owned and operated by James H. Murphy, for the sum of $17.64, receiving the difference in change. Perea and defendant, who waited for him across the street while

the former was cashing the check, then took the newly purchased tire a few blocks away and threw it in a ditch, divided the net proceeds of the check equally between them and went their respective ways. The events related occurred between 7:30 and 8:00 o'clock on the evening of the date mentioned.

At the time the check was presented to the witness, Murphy, as payment for the tire, Perea endorsed the check in his presence in the name of Willie Maldonado, the payee named therein, adding a fictitious address. Perea was known slightly to Murphy as a resident of the neighborhood although Murphy knew neither his name nor his address. Not having the necessary cash available to make the change for the tire purchase, Murphy cashed the check at a nearby drug store, known as Spencer Pharmacy. When the Pharmacy attempted collection through a bank, the check was returned as a forgery and in turn the Pharmacy called upon Murphy for reimbursement of the amount of the check, which the latter made good.

The next evening, on June 30, between 9:45 and 10:00 o'clock p. m., police officer Glen Young found the defendant's billfold near the entrance to High Hat Nite Club. This was in the 2100 block on North 4th Street, about eight (8) blocks from Murphy's Service Station, where the check had been cashed by Perea at defendant's instance the night before. The defendant's name and address were in the billfold; also a picture of him and two checks payable to Willie Maldonado, the same payee named in the check in question, one for the sum of $52.00, signed in the name of Leroy B. Mills, purported drawer of the check cashed and the other in the sum of $45.50, the purported drawer being "Leroy Mills." The officer communicated with defendant through a younger brother the following day and asked him to call by the police station as he had found the billfold. This the defendant did and upon arriving at the station he admitted the billfold was his, claiming to have lost it a day or two before. He later denied ownership of the checks which proved to be spurious and pleaded ignorance as to how they came to be in his billfold.

The defendant was held at the station for investigation in connection with other so called "bogus" checks purportedly signed by Leroy Mills upon which payment had been refused. He was later arrested for forgery and released on bond. Prior to trial an amended information was filed changing the charge to one of "uttering a forged check with intent to defraud James H. Murphy." It was upon this charge that defendant went to trial and was convicted as aforesaid. Three grounds are relied upon for reversal under the assignments of error made. They will be taken up in

the order argued by counsel for defendant.

■ First, it is said the verdict of guilty is without substantial support in the evidence. Main reliance in support of this claim of error is the effort to place this case in the same category with that of State v. Armijo, 35 N.M. 533, 2 P.2d 1075. We do not think the cases are enough alike to support the analogy sought to be drawn. In State v. Armijo we held that the "inherent improbability" of the story of the chief witness for the state denied the verdict substantiality. True enough, counsel for defendant in the case at bar, by skillful cross-examination, got the state's chief witness, Perea, pretty badly confused and drew from him some rather damaging admissions that he had given false testimony as to certain matters, as for instance, in stating he had endorsed the check before leaving defendant with the latter's fountain pen, whereas as Murphy testified and the witness later admitted, it was endorsed in the service station in Murphy's presence; also, in admitting he had told defendant's counsel at a conference in the latter's office, in defendant's presence, that he, Perea, had found the check.

These are but instances of the impeachment relied upon to cast doubt and undermine the damaging testimony of the witness, Perea. But in explanation of this contradictory statement in the office of defense counsel, Perea testified defendant had threatened to "get even" with him and that he spoke in fear of him at the time. Admittedly, the witness was not especially bright and it was for the jury to say whether the statement to defendant's counsel was induced by fear, as claimed; also, whether in admitting in response to counsel's leading questions that he had "lied" in the respects mentioned, Perea had actually committed perjury in the jury's presence or was simply a badly frightened and confused witness. He certainly made no admission that he was perjuring himself on his vital testimony connecting defendant with the offense charged, which found corroboration in other evidence in the case. Nor did defendant offer any plausible explanation of the presence in his lost billfold of the two other spurious checks bearing earmarks of being the handiwork of the same person writing the spurious check cashed by the witness, Perea, at defendant's request. This claim of error must be denied.

■ It is next claimed the trial court erred in refusing to strike the testimony of the complaining witness, Murphy, to the effect that the check he cashed was a forgery. The manner in which this question arises must be stated to give one an intelligent grasp of it. As already indicated, Murphy cashed the check at the

Spencer Pharmacy nearby. The Pharmacy deposited the check in its account with its bank and the bank dishonored same as a forgery. Naturally, it came back on the Pharmacy and thence to Murphy with the bank's reason for nonpayment. This testimony was all given without objection on defendant's part and the questioning had turned to another matter, namely, identity of Leroy Mills, the purported drawer, as to which several questions had been propounded before it ever occurred to counsel to move to strike the witness' testimony. Under the circumstances, the discretion of the trial court was invoked on whether to strike testimony thus given without objection. We can not say the court abused its discretion in denying the motion. State v. McKnight, 21 N.M. 14, 153 P. 76; State v. Lazarovich, 27 N.M. 282, 200 P. 422. Furthermore, the motion was directed to the whole of the witness' testimony, some of which obviously was pertinent and admissible. State v. Hernandez, 36 N.M. 35, 7 P.2d 930.

■ Finally, it is objected that prejudicial error was committed by the trial court in admitting in evidence State's Exhibit "A", the check in question, over defendant's objection. The spurious check was admitted during the direct examination of the witness, Perea, subject to the following objection by counsel for defendant, to-wit: "Mr. McAtee: I object to the admission of State's Exhibit 'A' on the ground that it has not been proven that that check was drawn or uttered by the defendant here or that the defendant signed any part or portion on any part or face of that check and for the further reason that there has been absolutely no evidence that the check is a forgery."

Following this objection, the trial judge questioned the witness, as follows:

"The Court: Let me see State's Exhibit 'A'. How old are you, Perea? A. Twenty.

"The Court: Twenty years old? A. Yes, Sir.

"The Court: How long have you lived in Bernalillo County? A. All my life.

"The Court: You have lived here all of your life? A. Yes, Sir.

"The Court: How long have you known Charlie Lopez? A. Ever since I used to go to school with him at Stronghurst.

"The Court: How long ago was that? A. About twelve, thirteen years ago.

"The Court: You have known him, all that time? A. Yes, Sir.

"The Court: Does Charlie Lopez know your name? A. Yes, Sir.

"The Court: Does he know your name is Johnny Perea? A. Yes, Sir.

"The Court: Does he know your name isn't Willie Maldonado? A. Yes, Sir.

"The Court: Charlie Lopez handed you a fountain pen? A. Yes, Sir.

"The Court: You wrote the name of Willie Maldonado on this check? A. Yes, Sir.

"The Court: In his presence? A. Yes, Sir.

"The Court: Objection overruled. State's Exhibit 'A' will be admitted. Show it to the jury."

It is to be remembered that testimony that the check was a forgery had already been admitted without objection and permitted to remain in by denial of defendant's motion to strike. When to this fact is added the quoted testimony of witness, Perea, that defendant asked him to secure cash on the check by adding the false endorsement of a fictitious name, "Willie Maldonado", it is difficult to see error in admitting the writing itself as one in proof of "uttering a forged check." The claim of error in the admission of this instrument, State's Exhibit "A" is without merit.

It follows from what has been said that the judgment should be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

COORS, J., being absent, did not participate.