**262 P.2d 233**

### STATE v. GARCIA.
### No. 5578.

Supreme Court of New Mexico.
Aug. 25, 1953.

Rehearing Denied Nov. 5, 1953.

Robert Hoath LaFollette, Albuquerque, for appellant.

Richard H. Robinson, Atty. Gen., William J. Torrington, Asst. Atty. Gen., Fred M. Standley, Asst. Atty. Gen., for appellee.

McGHEE, Justice.

The appellant was convicted of murder in the second degree and sentenced to serve a term of not less than 25 years nor more than 50 years in the penitentiary. We will hereafter refer to him as the defendant.

The killing occurred at a New Years Eve dance in the Armory at Albuquerque, New Mexico, shortly before midnight. The younger brother of the defendant and a companion had been assaulted by some other teen-agers in a suburb of Albuquerque a few days prior to New Years day, and the brother and two of his companions had engaged in a fight with a like number of boys at the Armory earlier in the evening. The younger brother had been defeated in each fight.

Immediately prior to the killing the younger brother pointed out to the defendant the ones who had whipped him. Unfortunately, Freddie Moya, who was later stabbed with a knife and killed, was then with this group on the dance floor. The defendant accosted the party and a conversation then ensued between the defendant and some of its members. The testimony is conflicting as to what was said, but the defendant testified he asked the boys why they had whipped his younger brother and that the boys accosted then said they would beat him up also and advanced upon him, some trying to get in behind him; that one or more had knives and that he got his knife out of his pocket, cut one boy who ran away, and then stabbed Freddie Moya one time. Other witnesses testified when the defendant accosted the boys he asked why they were whipping his young brother, that he had an open knife in his hand with which he immediately stabbed one Benavidez, and that he then stabbed Moya two times, once in the back and once in the chest. When the knife blade entered the chest it cut the aorta and

Moya sank to the floor and died in a very short time while enroute to a hospital.

The defendant said he saw Moya sinking to the floor but turned and joined the dancers before the body reached the floor. He danced for a time after the stabbings and then left for home, throwing the knife away a short distance from the Armory where it was found and turned over to the police. The defendant was arrested shortly thereafter and on January 2nd following, he admitted the killing, identified the knife as the one he had used in the stabbing, and at the same time made certain exculpatory statements the effect of which will be discussed later.

Among other points relied upon for a reversal are the following:

a. The court erred in submitting the charges of murder in the first degree and second degree to the jury, in that the evidence shows the defendant acted without malice, upon a sudden quarrel and in the heat of passion.

b. There was not sufficient evidence to show malice, deliberation or premeditation, but that if it was proper to submit second degree, which he denied, certainly it was error to submit first degree to the jury.

█ As the jury only convicted the defendant of murder in the second degree, the submission of first degree was harmless, as held in State v. Horton, 57 N.M. 257, 258 P.2d 371.

█ After a careful examination of the testimony we disagree with the contention of the defendant there was not sufficient evidence to establish murder in the second degree. We have the testimony of his anger and resentment over the whipping of his younger brother on two occasions, and the one who was killed was in the company of the assailants. The testimony shows he was angry because of the whippings administered to his younger brother when he approached the boys on the dance floor, and testimony on the part of the state shows he attacked and cut two with his knife without any present provocation. This was sufficient upon which to submit the issues of murder in the first degree and second degree to the jury, and likewise to withstand the motion of the defendant for an instructed verdict of not guilty. The trial court also submitted the issues of voluntary manslaughter and self defense, the latter issue being the one relied upon by the defendant to secure a verdict of not guilty.

The substance of the exculpatory statements which the defendant claims entitled him to a directed verdict of not guilty is that when he identified the knife and said he had stabbed Moya, he told the officers who took the statement:

"I walked up to those guys and asked them why they had beaten my brother and then they told me if I wanted them to beat me up too,"

and

668

"I didn't have any intention of fighting and they acted pretty rough and pulled some knives out, and I pulled my knife out, too, and there were a lot of guys backing me up, so I started after those guys and I started stabbing."

 The statement made by the defendant to the officers was related to the jury. It is true, as stated by us in State v. Hernandez, 1931, 36 N.M. 35, 7 P.2d 930, when the state introduces a confession containing exculpatory statements which constitute a defense to the charge it has the burden of disproving them before the case may go to the jury. This requirement, however, is limited to some tangible, affirmative, defensive exculpatory matter capable of specific disproof, and not extended to a mere reiteration of innocence embraced in the plea of not guilty. State v. Langdon, 1942, 46 N.M. 277, 127 P.2d 875. This would eliminate the necessity for specific disproof of the intent of the defendant when he approached the boys afterwards assaulted, but we believe the acts, conduct and doings of the defendant disprove his statement as to his intent. Certainly, the record amply refutes the other exculpatory matter.

 During the trial the district attorney asked one of the defendant's witnesses if he had served a term in the New Mexico Industrial School. The witness was also asked why he had been sent, and replied it was too long ago for him to remember, that it was in 1950. (The trial of this case was started on April 7, 1952.) No objection was made to the questions until some five questions had been asked and answered, and it was then promptly sustained; and, according to the uncontroverted statement made by the trial judge on the motion for a new trial, the jury was instructed to disregard the questions and answers. The Attorney General admits, we believe, the questions were improper but says the defendant should have objected, and that he was not prejudiced by such questions. We agree the questions should not have been asked, but there was a duty owing to the court by the defendant's counsel to promptly object. In view of the prompt action of the trial court when objection was made we do not believe there was prejudicial error so as to justify a reversal of the conviction. The defendant cites our case of State v. Cummings, 1953, 57 N.M. 36, 253 P.2d 321, where we said we did not believe the trial court could have eliminated the prejudice resulting from the improper argument of the district attorney. There the district attorney had three times made the same highly prejudicial statement in his closing argument to the jury. The trial court had twice sustained objections and told the jury to disregard the statement, but finally let the district attorney's third statement stand, which is an entirely dif-

ferent situation from the one we have here.

■ The defendant also asserts the trial court erred in refusing to grant him a new trial on the ground of newly discovered evidence. Attached to the motion was an affidavit by one Henry G. Anaya that he saw one of the state's witnesses, Julian Jojola, draw a knife on the defendant at the time of the fatal encounter, although Jojola had testified at the trial he did not have a knife at that time.

In Floeck v. Hoover, 1948, 52 N.M. 193, 195 P.2d 86, 90, we approved the requirements for a new trial as set out in State v. Luttrell, 1923, 28 N.M. 393, 212 P. 739, as follows:

"* * * (1) it must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely impeaching or contradictory to the former evidence."

Clearly, the granting of a new trial is barred by conditions one and three. We agree with the statement of the trial judge there is little probability it would change the result of the trial, as well as his statement there had been a lack of diligence on the part of the defendant in making inquiry of the witness Anaya as to what he would testify. His name was given to the attorney for the defendant prior to the trial as one of the eye witnesses to at least a part of the difficulty, but no one acting for the defendant talked to the witness. The attorney for the defendant says he was surprised at the testimony of the witness, but this is not sufficient to avoid condition numbered three above.

Consideration has been given to all points urged here by the defendant but we find nothing which would justify a reversal.

The judgment will therefore be affirmed, and it is so ordered.

COMPTON, LUJAN, and SEYMOUR, JJ., concur.

SADLER, C. J., absent from state and not participating.